IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| Dr. Johnathan Castille,<br>    *Plaintiff,* | §<br>§<br>§ | Civil Action _____ |
| v. | §<br>§ | Judge_____ |
| Port Arthur ISD, et al,<br>    *Defendants.* | §<br>§ | Jury Trial Demanded |

### PLAINTIFF'S ORIGINAL COMPLAINT

To the Honorable Judge of Said Court:

Comes now Plaintiff Dr. Johnathan Castille complaining of Port Arthur ISD, Superintendent Dr. Mark Porterie, Dr. Melissa Oliva, Monique Bienvenue, Michael Oliver, and Texas Commissioner of Education Michael Morath; and in support hereof, Plaintiff would show the following:

### PARTIES

**A.   PLAINTIFF**

1.   Dr. Johnathan Castille ("Plaintiff") is a resident of the Eastern District of Texas.

**B.   DEFENDANTS**

1.   Port Arthur ISD ("PAISD")is situated in the Eastern District of Texas, with its principal place of business in Port Arthur , Jefferson County, Texas.

1

2.    Dr. Mark Porterie ("Porterie"), being sued individually, is Superintendent of the PAISD and is believed to reside in Beaumont, Texas within the Eastern District of Texas.

3.    Dr. Melissa Oliva ("Oliva"), being sued individually, former Principal of Memorial High School was at all times material hereto an employee of PAISD, and may be served with process wherever he may be found in the United States.

wherever she may be found in the United States.

4.    Monique Bienvenue ("Bienvenue"), being sued individually, former SPED Teacher at PAISD Memorial High School was at all times material hereto an employee of PAISD, and may be served with process wherever he may be found in the United States.

wherever she may be found in the United States.

5.    Michael Collier ("Collier"), being sued individually, former SPED Teacher at PAISD Memorial High School was at all times material hereto an employee of PAISD, and may be served with process wherever he may be found in the United States.

6.    Texas Commissioner of Education, Mike Morath ("Morath") may be served with process wherever he may be found in the United States.

2

## JURISDICTION

**A.    FEDERAL JURISDICTION**

1.    Original: Per Title 28, USC,§ 1331 this court has federal jurisdiction over those federal questions presented which relate to the First and Fourteenth Amendments.

2.    Pendent or supplemental: Per 28 U.S.C. § 1367, this court has the power to decide not only the federal question involved but also any other questions – whether federal or state in nature – that must be resolved in order to decide the claim.

## FACTS

**A.    August, 2021**

**1. 1. PAISD Teacher Michael Oliver abused SPED Student JM.**

**B.    September 22, 2021**

1.    Plaintiff was targeted by Principal Oliva in retaliation for having pushed disciplinary actions for two Special Education teachers Mr. Michael Oliver and Ms. Monique Bienvenue.

3

2.    Oliver, on August 17th 2021, used withholding a Special Education (autistic non-verbal) student's (JM) lunch as *a form of discipline* and provided the parent with notes without administration approval.

3.    Ms. Monique Bienvenue was caught on camera on September 22, 20/21 at 2:00 o'clock PM in the sensory room interrogating a special education (autistic verbal) student (FR) in an extreme manner, so extreme that during the interrogation of the child, Ms. Bienvenue flipped the student's table over almost hitting FR, also being caught on camera emptying the student's backpack, ripping all of his papers and throwing the backpack content on the floor while FR was crying and frustrated.

4.    During the entire time of Ms. Bienvenue's outburst, she was calmly observed by Michael Oliver standing in the doorway and looking on, but never intervening or attempting to de-escalate the situation.

5.    The parent was not notified by the teacher and I provided Dr. Oliva all of the documentation listing all of the violations. The parent was initially denied access to the video, but finally she was allowed to watch the video with Plaintiff and Principal Oliva.

2. After the parent watched the video and left in tears, Principal Oliva asked Plaintiff to state what he had seen on the video, and he told her that he saw Ms. Bienvenue flip the table over and tear up the student's papers. Principal Oliva again asked Plaintiff what he had seen and he repeated his statement telling her the same thing.

3. **Principal Oliva said, "Dr. Porterie wants to get rid of you and I can't keep you if I can't trust you."**

4. which exactly Days later CPS was notified by the parent and an investigation was started. As of today, february 1st 2022 nothing has been done. Also because I filed A grievance with her each time the parents call and I remind her I find myself at the center of attack. For example on october 6th 2021. Hi

**C.   September 29, 2021**

**D.   October 6, 2021**

1. On October 6, 2021, Principal Oliva suspended Plaintiff for three days with pay "while an investigation into an incident involving an altercation on September 29,2021 is complete. On September 29, 2021, at approximately 7:08 a.m., you watched two boys fight in front of the cafeteria and did not make any attempt to deescalate the situation." (Exh. 2)

2.   On October 19th 2021, Plaintiff called a grievance against principle Oliver-memorial high school principal stating the incident has referenced was based upon a fight that took place in the cafeteria, on September 29, 20/21 at approximately 7 oh 8:00 AM and as explained by doctor oliva our campus principal who is not on campus during the time of the incident shared with me a partial video of the incident that I, Jonathan Castille did not intervene at in may we say an urgent enough nor an acceptable prudent fashion. I totally disagree with that interpretation; and I request that a full peripheral view of the video takes place independently. The full review will prove that other administrators were present and did not assist and in fact I did engage in the breakup of the incident." (Exh. 3)

3.   On October 6/20/21 point of says that he was cold down to view a snippet of a fight that had taken place on September 29th 2021. On that morning several flights erupted. Point of intervene as best he could at a location that was not his duty spot. The last fight, two guys were going. Final was unable to physically break the fight up by himself. In fact, standing right across from plaintiff was the other administrator who was indeed on duty in that area. Watch help came, plaintiff did intervene and breaking the fight up. The administrator that was on duty did not. Plaintiff was suspended without receiving any

verbal warning or training on this matter, while the administrator who was on duty and actually did not intervene was not acknowledged or disciplined at all. In short, Principal Olivia has made it possible for Plaintiff to be successful at anything on campus. Plaintiff is the administrator over Fine Arts and Special Education. Without discussing any changes with him, she reassigned his SPED inclusion teachers to core content areas which made it impossible for him to service the population of students that have an Individua Educational Plan. After Principal Oliva made that decision she emailed Plaintiff to inform him that when SPED teachers are out, Plaintiff has the responsibility to cover those classes with certified Special Education Teachers. Principal Oliva's assignment to him was impossible. Principal Oliva assigned every administrator including Plaintiff a duty partner and she assigned herself to Plaintiff as his duty partner. However, she refused to complete her duty with Plaintiff and was usually not at her duty station.

**E.   On October 26, 2021**

1.   Plaintiff and Principal Oliva watched the security video of  Bienvenue's abuse of FR, and Oliva tried to get Plaintiff to alter what he had seen.

**F.   My reports to the Child Protective Services, and EEOC.**

7

1.    Principal Dr. Oliva (White) wanted to replace me with Michael Oliver (White and mid-thirties) but not because of his qualifications.

2.    I opposed that discriminatory practice and filed a grievance, and Principal Oliva tried to make me fail in my job, and she is willing to not tell the truth to accomplish her goal.

3.    I reported Mr. Oliver's perceived abuse of Special Education Department (SPED) student JM ( I have been told JM was assaulted by PAISD teacher Sharon Robinson in 2019 when JM was at Thomas Jefferson) and JM reportedly had an earlier and negative history with Principal Oliva from PAISD's Sam Houston school.

4.    Plaintiff also reported and watched security recordings with Principal Oliva of Ms. Bienvenue's and Mr. Oliver's abuse of student FR, and testified as a witness to CPS for the children in mid-December 2021,which has resulted in citations against PAISD (according to CPS).

5.    I also reported to Principal Oliva that Assistant Principal Victor Fullton had wrongly tried to send a SPED child to Alternative Campus for cursing Fulton, when Fulton had provoked the child by cursing the child first; in fact Mr. Fulton had even yelled at the parent.

6.    Plaintiff was responsible for Memorial's SPED program and the only person in the Memorial administration who SPED parents seemed to tell about the bad actions of staff members.

7.    Plaintiff also reported Principal Oliva's misappropriation of federal funds by having federally earmarked IEP/ Inclusion teachers pay for non-earmarked (CORE) purposes to Porterie and Getwood, in the chain of command.

**G.    December 13/14, 2021, Plaintiff was interviewed by the CPS agent regarding Collier's and Bienvenue's abuse of JM, and FR.**

1.    CPS AGENT Robles aka Romulus (sp) interviewed Plaintiff in the presence of  Principal Oliva, and in one of the interviews, Oliva falsely said she told Plaintiff to suspend Collier, and was corrected by Plaintiff and the CPS agent.

2.    On or about late January and/or early February 2022, Plaintiff was not only in contact with the CPS but also with Bethany Sams, for herself and Ms. Juanita Rodriguez, mothers of JM, and FR.

**H.    January 6, 2022**

1.    On January 6, 2022 at around 6:00 pm Plaintiff went to the PAISD warehouse to pick up some washing powder (detergent) which had been donated to the school during the 2020-2021 school

year to provide to a Mother of JM, an autistic SPED student who had *soiled* his clothes at school.

2.   As a voluntarily assumed duty, Plaintiff washed the *soiled* clothes of SPED students, but had not had a chance to launder JM's clothes as is usually done.

3.   JM had a bladder control problem and regularly soils his clothes.

4.   JM's mother is a single, working parent, and had experienced a series of problems with Principal Oliva and Special Education Teacher, Mr. Oliver who had told the Parent that the Principal had said the mother "..is Bi-Polar and a problem parent."

5.   Plaintiff became aware that JM had been through hard times with Principal Oliva when she had been the Principal at the elementary school, and that those problems had followed him to the middle school, and to the Memorial High School, all of which had occurred before Plaintiff was employed by the District.

6.   So, having not had time to launder JM's soiled clothes, Plaintiff had the detergent available which had been donated to the school and decided to give that to Ms. Bethany Sam, JM's Mother, just "to smooth over the situation".

7.    While at the PAISD Warehouse, interacting with Warehouse supervising-employee Demetria Williams regarding the detergent, Plaintiff mentioned *the teacher outages* due to COVID 19, mentioning to Ms. Williams ed Ms. Williams that we had 8 classes of students in the auditorium, and Plaintiff needed to borrow 2 *fog/sprayer* machines to *fog* the auditorium in-between classes.

8.    Ms. Williams replied "OK", and gave or allowed Plaintiff to collect the two boxed foggers/sprayers.

9.    Plaintiff left with the warehouse with the detergent and the two foggers, and with a permanent marker, Plaintiff wrote on the two fogger/sprayer boxes, words to the effect, "Borrowed from warehouse not property of MHS"; Plaintiff wrote the identifying information on the two boxes containing the foggers/sprayers, so the foggers would not be mixed in with the "inventory on campus".

10.  Plaintiff arrived back at the Memorial High School Campus  at around 6:45 p.m., obtained a  container of the disinfectant for the foggers/sprayers needed to fumigate and spray the auditorium.

11.    Plaintiff did spray the entire auditorium on his own "personal time" to ensure it was safe for the students who would return to school the very next day.

12.    After fogging and spraying the auditorium, Plaintiff cleaned and placed the fogger he had used back in its box.

13.    Plaintiff left the two boxes in the auditorium.

14.    The next day, on January 7, 2022, at around 11:15 a.m. Mr. Edgar Rideaux, Warehouse Supervisor came to Memorial High School and met Plaintiff in the cafeteria.

15.    The meeting between the two men was congenial.

16.    Mr. Rideaux told Plaintiff that whenever he needed anything for his Memorial High School campus to email Rideaux instead of asking Ms. Williams. Rideaux said, " N*o one is in trouble but that the process of* [*Plaintiff*] *going to Rideaux directly would ensure that everything would be tagged correctly by the warehouse...",* adding, "*Ms. Williams did not properly log-out the foggers.*"

17.    Plaintiff apologized for any inconveniences that may have been inadvertently caused by Plaintiff's not knowing to email Rideaux directly and in the future, Plaintiff "..would follow [Rideaux's] directions."

18.    Rideaux walked with Plaintiff to the school's auditorium where Plaintiff had placed **both** boxes.

19.    Rideaux told Plaintiff he understood Plaintiff's reasons and he just wanted Plaintiff to be informed of the *future process*.

20.    Rideaux again told Plaintiff that Rideaux understood, and he was "there to help Plaintiff, and Plaintiff should just know next time something is needed how to ensure it is reserved and received correctly."

21.    Rideaux also *advised* Plaintiff to call Ms. Williams and assure her that there was no problem between them, and Plaintiff did as Rideaux instructed, however Ms. Williams did not answer, so Plaintiff texted her as well.

**I. SPED Mother's Ms. Sams Again Inquired of Plaintiff If PAISD Was Investigating Bienvenue and Oliver for Abuse of Students JM and FR**

1.    The mothers of JM and FR, by Bethany Sams (mother of JM)continued to contact Plaintiff to inquire if Principal Oliva and or the PAISD administration had disciplined Teachers Monica Bienvenue.

2.    Plaintiff would diligently bring the inquiries to the attention of Principal Oliva, and each time that he did, she would criticize him and clearly pushback against him, as she had

from the beginning when she had used a security video suspiciously edited by PAISD's Director of Technology

**J.    February 1, 2022**

1.    On February 1, 2022, in accordance with his understanding of the internal policies, Plaintiff sent an email to PAISD Assistant Superintendent Dr. Melvin Getwood reporting what Plaintiff believed to be retaliatory harassment by Principal Oliva.

2.    Dr. Getwood called Plaintiff at Memorial High School and asked Plaintiff to meet him at 3:05 PM.

3.    Plaintiff went to Getwood's office and stayed for about 30 minutes in conversation with Dr. Getwood.

**K.    February 3, 2022**

1.    On February 3, 2022, Plaintiff was told by Mr. Wyble to meet with him and "Ms. Carrier".

2.    Plaintiff asked if he should contact Larry watts, his lawyer and Wyble said, "You will not."

3.    Plaintiff did not recognize the name "Carrier" and said that he would do as instructed and went to Wyble's office, where he was told to wait until Ms. Carrier arrived.

14

4.    Plaintiff did not know that Ms. Carrier was the former Melody Chappell who had remarried and was now called Ms. Carrier, until she entered the room.

5.    Ms. Chappell-Carrier asked Plaintiff what happened on January 6, 2022, and Plaintiff told her what had happened regarding JS, Plaintiff going to the warehouse to pick up the detergent, and borrowing the foggers/sprayers.

6.    At some point, Wyble is recalled by Plaintiff to have apparently turned on a tape recorder, but is not recalled as having announced his intention to record; yet, Plaintiff perceives that Wyble recorded the conversation of Plaintiff with Melody Chappell Carrier and Wyble.

7.    Ms. Chappell-Carrier asked for a list of "product donations" from "friends of the school" from which Plaintiff had gotten the detergent for JS' mom, and Plaintiff identified the donor list then and/or later in writing, stating that he was using the same process for distribution he had used under the Principal of Memorial during the previous 2019-2020 year, Dr. Glen Mitchell.

8.    The donors and products identified by Plaintiff were:

a.    **"Matthew 25"** – Gain detergent, air fresheners, balls of trial sized deodorant ,  oil olaye,  shaving cream, antibacterial wipes

    b.    **"Associates"**- 10 Turkey's and 10 Hams

    c.    **Wal-Mart**- folders, tablets, reading and math workbooks, flash cards, backpacks, mask and socks

    d.    **Harvey Recovery** -socks, shoes, jackets, t-shirts,

    e.    **"Harvest for Lost Souls"** – water, cleaning buckets, paint , alarm clocks and coffee pots, bleach

    f.    **"Antioch Baptist Church"** – Cleaning supplies

    g.    **"Zeta Phi Beta"** -School supplies- Brenda  Sykes

    h.    **Office Depot on Stadium Drive-**Discounted and I purchased for students.

9.    Mr. Wyble told Plaintiff he "..may need [Plaintiff] to write a statement about the foggers but if he did he would let [Plaintiff] know", to which Plaintiff alerted Wyble that Plaintiff would be out of town at his Uncle's funeral.

**L.    February 4, 2022**

1.    Wyble telephoned Plaintiff the following day, February 4 during Plaintiff's attendance at his uncle's funeral in Houston.

2.    A freeze happened on February 4-February 7. On February 4, 2022, while I was at the funeral home in Houston, Wyble called and said, "I regret to call you at the funeral home, and do you have the statement for me?"

3.    Plaintiff responded, "No, because you said you may need me to write a statement and if you did you would let me know, and you haven't let me know."

4.    Mr. Wyble then replied, "That's right-that's right. Well you go ahead and start working on one."

16

5.    Plaintiff said, "OK", and Wyble then said, "Can you get it to me by Tuesday?", to which Plaintiff replied, "I need to get with Mr. Watts, my lawyer."

6.    Mr. Wyble then said, "Okay. Get back in touch with me." I tried to get in touch with my lawyer but he was entertaining out-of-state family members and the freeze prevented him from being able to talk with me that weekend.

**M.    February 8, 2022**

1.    Mr. Wyble called me on Tuesday, February 8, 2022 from his cell phone, three different times, about 3:23 PM, and I answered on the third call and he asked me, "Are you back to work?" I responded "Yes". He then said, "Have you been working on the statement?" I said, "Yessir. My lawyer and I have been working on it and he will email it to Melody when we get through." Mr. Wyble said, "OK".

2.    Suddenly on Valentine's Day, I was notified by Dr. Porterie to meet him in his office at 11 o'clock or 11:15 o'clock. I called Mr. Watts and he accompanied me to the meeting by being on my telephone. Mr. Watts introduced himself as being on the phone to Dr. Porterie and Mr. Wyble and was told by Dr. Porterie that the meeting would be short and had an nothing to do with any of my grievance issues against Principal Oliva. Mr.

Watts disconnected and after he did I was told that I was being suspended with pay because I had not given Mr. Wyble the statement which he had requested, and that there was going to be an investigation.

**N.   February 23, 2022 and the EEOC**

1.   Plaintiff filed a Charge of Discrimination against PAISD. 460-2022-02758, on February 23, 2022.

2.   Plaintiff received a federal right to sue letter from the US DOJ on or about January 9, 2023, but elected not to file that claim in federal court.

3.   PAISD filed its Position Statement with the EEOC on or about May 5, 2022.(Exh.s 12, and 13.

**O.   Plaintiff's internal grievance (he filed two) February 24, 2022 before Getwood.**

1.   On March 10, 2022, Getwood signed a "Notice of Decision". (Exh 11)

**P.   May 17, 2022**

1.   On May 17, 2022, the Board of Education published its agenda for regular board meeting that evening, and without mentioning Plaintiff by name, indicated that Board action would be taken on Term Contract personnel.

18

2.    Plaintiff received no advance notice from the Superintendent or Board that Plaintiff or his employment terms and or contract were on the agenda or to be considered at the May 17, 2022 Board meeting.

3.    The Board meeting occurred on May 17, 2022, and the published minutes of that meeting were again silent regarding Plaintiff, with no mention of Plaintiff or his employment terms and or contract having been considered at the May 17, 2022 Board meeting.

4.    On May 18, 2022, the Superintendent of PAISD, Porterie, notified Plaintiff by letter that his 2021-2022 annual contract of employment set to expire at the end of the 2021-2022 school year was being terminated after an opportunity to challenge the proposed action to terminate.

5.    Plaintiff elected to challenge the proposed action and was assigned a Hearing Examiner, Nicole Stagg, to moderate the reception of evidence and make a decision based on the PAISD's burden to support its claims that Plaintiff should be terminated by a preponderance of the evidence.

6.    The Hearing Examiner ("HE")convened the hearing on October 4-5, 2022, and arbitrarily excluded evidence produced by Plaintiff.

**Q.    Monique and Oliver Go again, with the School Nurse on or About May 18, 2022**

1.    The last week of school, as captured by the security video, Bienvenue slugged SPED student RL twice in the face as Collier and the school nurse looked on.

2.    It is believed that the nurse was promoted and Bienvenue and Oliver resigned to go elsewhere.

**R.    Issues to be decided by the HE**

1.    An issue to be decided was whether Plaintiff had suffered adverse personnel actions in violation of  the Texas Whistleblower Act.

2.    An issue to be decided was whether there existed good cause to terminate Plaintiff's employment with the PAISD.

**R.    The HE was unreasonably arbitrary in her material decisions**

1.    The HE intentionally constructed an arbitrary decision supporting PAISD's proposed termination of Plaintiff, transparently made up of arbitrary findings of fact and conclusions of law, which were clearly pretextually contrived to effect PAISD's desired goal.

**S.    The Board of Trustees of the PAISD Arbitrarily Adopted the HE's Findings of Fact and Conclusions of Law.**

20

1.   On December 12, 2022, a majority of the PAISD Board of Trustees voted to adopt the HE's Findings of Fact and Conclusions of Law and terminate Plaintiff's employment.

**T.   Plaintiff appealed to the Texas Education Commissioner**

1.   On April 26, 2023, the Commissioner of Education issued final administrative decision on Plaintiff's grievance of being subjected to adverse personnel actions in violation of the Texas Whistleblower Act denying Plaintiff's appeal.

2.   Within 30 days per TRCP_4 and FRCP 6 (a)(1)(C)Plaintiff files this action herein.

## CAUSES OF ACTION

**A.   Administrative Appeal**

1.   Against PAISD and Morath, an administrative appeal from PAISD's and the Commissioner's decisions because they were arbitrary.

**B.   Texas Whistleblower Act**

1.   PAISD retaliated against plaintiff because he, in good faith, reported and served as a witness against PAISD to an appropriate law enforcement authority the CPS.

21

2.    Specifically, Plaintiff reported Oliva, Bienvenue, and Oliver for conspiring to and committing aggravated assault against JM and FR, disabled children.

3.    Specifically, Plaintiff initiated an appeal to the PAISD Board of Education, and even to the Commissioner of Education until and through April 26, 2023. And has filed this suit within 30 days from the termination of his appeal.

**C.    Constitutional Violations**

1.    Defendants have joined together in a civil conspiracy to violate the rights privileges and immunities secured to Plaintiff by the First and Fourteenth Amendments to the Constitution of the United States.

2.    As against Morath, a *Younger v. Harris* claim for declaratory and equitable relief.

**RELIEF**

1.    Plaintiff seeks a declaratory judgment that PAISD and Morath acted arbitrarily in the matter of the denial of Plaintiff's appeal from the adverse personnel actions taken against Plaintiff.

22

2.    Plaintiff seeks a declaratory judgment against PAISD that it retaliated against plaintiff in violation of the Texas Whistleblower Act.

3.    Plaintiff seeks legal relief for the deliberately indifferent acts of the PAISD and individual defendants against Plaintiff resulting in the deprivation of his constitutional rights.

4.    Plaintiff seeks a mandatory injunction against PAISD whereby Plaintiff would be reinstated to his position or a similar position as Assistant Principal.

5.    Plaintiff seeks money damages from PAISD, Porterie, Oliva, Bienvenue, and Oliver.

6.    Plaintiff seeks attorney's fees and costs per Title 42 § 1988 from all defendants except Morath.

7.    Plaintiff seeks any other relief to which he may show himself justly entitled.

Respectively submitted,
Watts & Company, Lawyers Ltd.

/S/ *Larry Watts*
Larry Watts


Watts & Company, Lawyers Ltd.

23

/S/ *Larry Watts*
Larry Watts
SBN 20981000 FID 7092
P.O. Box 2214
Missouri City, Texas 77459
Phone (281) 306-6801
Cell (281) 431-1500
Fax (877) 797 4055
wattstrial@gmail.com

**1.**

2.

3.