185/IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| DR. JOHNATHAN CASTILLE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:23-CV-209-MJT |
| | § | |
| PORT ARTHUR ISD, MARK PORTERIE, | § | |
| MELISSA OLIVA, MONIQUE | § | |
| BIENVENUE, MICHAEL OLIVER, and | § | |
| MICHAEL MORATH, | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION**
**ON FOUR MOTIONS TO DISMISS (Docs. #12, #13, #21, #42)**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred to the undersigned magistrate judge for consideration and disposition of Defendants Port Arthur ISD's, Bienvenue's, and Porterie's Motion to Dismiss, Defendant Morath's Motion to Dismiss, Defendant Oliva's Motion to Dismiss, and Defendant Oliver's Motion to Dismiss.  (Docs. #12, #13, #21, #35, #43, #44.)  After review, the undersigned recommends granting the motions in part under Rule 12(b)(1) and in part under Rule 12(b)(6).

I.    **Background**

A.  Factual Background

Plaintiff was an assistant principal under contract at Port Arthur ISD's Memorial High School for the 2021-2022 school year.  On February 14, 2022, Dr. Porterie, Port Arthur ISD Superintendent, informed Plaintiff that he was suspended with pay pending an investigation into the allegation that Plaintiff took district property for unauthorized uses.  (Doc. #10 at 12-13.)

According to Plaintiff, the true reason for the suspension was retaliation for Plaintiff reporting two teachers, Defendants Bienvenue and Oliver, for abuse of special needs students, after which Principal Oliva could no longer trust him.[1]

According to his amended complaint, Plaintiff attended an internal grievance hearing on February 24, 2022.  (*Id.* at 14.)  Plaintiff also alleges there was a meeting of the Port Arthur ISD Board on May 17, 2022, but he does not explain the significance of this meeting.  (*Id.*)  On May 18, 2022, Plaintiff received notice he was being terminated but would have an opportunity to challenge the proposed action with the State of Texas.  (*Id.*)  On October 4 and 5, 2022, the Hearing Examiner of the Texas Education Agency (TEA) held an evidentiary hearing on Plaintiff's termination.  (*Id.* at 15.)  The Hearing Examiner recommended Plaintiff's termination for good cause.  (*Id.*)  According to Plaintiff, On December 12, 2022, the Port Arthur ISD Board "arbitrarily voted" to adopt the Hearing Examiner's findings and conclusions and officially fired Plaintiff.  (*Id.*)  Sometime thereafter, Plaintiff appealed to Texas Education Commissioner Michael Morath.[2]  (*Id.*)  Commissioner Morath affirmed Port Arthur ISD's decision.  (*Id.*)

### B. Procedural Background

On May 30, 2023, Plaintiff filed suit against Port Arthur ISD, Superintendent Porterie, Principal Oliva, teachers Bienvenue and Oliver, and Texas Education Commissioner Michael Morath, alleging a conspiracy to violate his rights under the First and Fourteenth Amendments and violations of Texas state law.  (Doc. #1.)  Defendant Morath filed his first Motion to Dismiss on September 15, 2023, arguing Plaintiff lacked standing and failed to state any claims.  (Doc.

---

[1] In Plaintiff's response to Defendants Port Arthur's, Bienvenue's, and Porterie's Motion to Dismiss, he also notes that Plaintiff is Black, Defendant Oliva is Hispanic, and Defendant Bienvenue is white.  (Doc. #17 at 5.)  In his amended complaint, however, Plaintiff does not mention the parties' races or otherwise allege racial discrimination.
[2] Plaintiff had also pursued claims regarding his termination with the United States Equal Employment Opportunity Commission.

#5.)  On October 2, 2023, Defendants Port Arthur ISD, Bienvenue, and Porterie, filed their first Motion to Dismiss arguing Plaintiff did not state any federal claims and that the court did not have jurisdiction to hear the state law claims.  (Doc. #6.)

Plaintiff filed his first amended complaint on October 24, 2023, and the previous motions to dismiss were denied as moot.  (Docs. #10, #11.)  The operative amended complaint is unclear as to which claims are lodged against which Defendants, and Plaintiff's responses to the instant motions often contradict what is set forth in the amended complaint.[3]  After thorough review, the undersigned finds that Plaintiff brings the following claims: (1) a federal law claim for conspiracy against Port Arthur ISD, Bienvenue, Oliva, Oliver, and Portier for the violation of unspecified constitutional rights,[4] (2) a Texas Whistleblower Act (TWA) claim against Port Arthur ISD, (3) a claim against Defendant Morath for failing to adhere to Texas law (stated as a *Younger v. Harris* claim),[5] and (4) a request for judicial review of a state administrative proceeding.

Defendants Port Arthur ISD, Bienvenue, and Portie filed their current Motion to Dismiss on November 7, 2023.  (Doc. #12.)  They argue that (1) Plaintiff fails to state a cognizable constitutional violation, (2) his TWA claim is barred by governmental immunity and cannot be brought in federal court, and (3) the individual defendants are entitled to qualified immunity. Plaintiff responds by clarifying his claims, adding an "alternative" Title VII, and informing the court he would file a motion for leave to file a Second Amended Complaint to address the issues

---

[3] For example, in his response to Defendants Port Arthur ISD's, Bienvenue's, and Porterie's Motion to Dismiss, Plaintiff claims to be bringing a Title VII claim and adds additional information about the race of the parties.  (Doc. #17 at 2, 5.)  Neither these claims, nor these factual allegations are included anywhere in the amended complaint.

[4] Plaintiff asserts this claim against "Defendants," but clarifies in his response to Defendant Morath's Motion to Dismiss that this claim is not asserted against Defendant Morath.  (Doc. #19 at 1-2.)

[5] In his response to Defendant Morath's current Motion to Dismiss, Plaintiff argues that he actually asserts an *ex parte Young* claim against Defendant Morath.  (Doc. #19 at 1-2.)  Defendant Morath's original Motion to Dismiss, however, addressed Plaintiff's claims under a *Younger v. Harris* framework, and Plaintiff filed an amended complaint which did not change the classification of his claim against Defendant Morath.  (Doc. #10.)  Because Plaintiff already had an opportunity to amend, the undersigned does not consider Plaintiff's response to a pending motion as functionally repleading his claims.

raised in the Motion to Dismiss before December 21, 2023.  (Doc. #18.)  Plaintiff never filed such a motion, and the First Amended Complaint remains operative.

On November 16, 2023, Defendant Morath filed his Second Motion to Dismiss arguing (1) he is entitled to qualified immunity and quasi-judicial immunity, (2) Plaintiff's request for judicial review of an administrative decision is functionally an administrative appeal and is, therefore, brought in the wrong forum under the Texas Administrative Procedure Act, (3) Plaintiff fails to plead an constitutional violation, and (4) the court lacks jurisdiction to enter a declaratory judgment.  (Doc. #13.)  Plaintiff argues in his response that he actually intended to sue Morath in his official capacity for "arbitrarily" failing to comply with Texas law at the evidentiary hearing in violation of Plaintiff's substantive due process rights, and that he seeks appropriate relief under *ex parte Young* doctrine.[6]  (Doc. #19 at 1-2.)

Defendants Oliva and Oliver appeared later and filed their Motions to Dismiss on December 19, 2023, and June 26, 2024, respectively.  (Docs. #21, #42.)  These motions largely reiterate the same arguments lodged by the other individual Port Arthur ISD Defendants.  (Doc. #21.)  In pertinent part, they (1) assert qualified immunity, and (2) argue that Plaintiff fails to state any constitutional claims.  Plaintiff's response to Defendant Oliva's motion focuses largely on Plaintiff's claim that Port Arthur ISD has an "unwritten policy" to punish employees that are allegedly disloyal.  (Doc. #31 at 2-5.)  Plaintiff also requests leave to amend due to the allegation that Defendants are concealing Defendant Oliver's "presence," but Defendant Oliver has since appeared.  (Docs. #31 at 6-7; #42.)  Finally, Plaintiff discusses the potential recusal of Port Arthur Defendants' counsel.  (Doc. #31 at 7-9.)  Under the Eastern District of Texas Local Rules, such a

---

[6] *See* footnote 5 *supra*.

request must be brought in its own motion.  E.D. TEX. LOC. R. CV-7(a).  Accordingly, the undersigned will not entertain this request for recusal.

Plaintiff has failed to respond to Defendant Oliver's Motion to Dismiss.  The motion was filed on June 26, 2024, giving Plaintiff until July 10, 2024, to respond.  E.D. TEX. CV-7(e).  On that date, rather than filing a timely response, Plaintiff filed an opposed motion asking the court for two additional weeks to respond.[7]  (Doc. #43.)  The court granted the motion in part, providing Plaintiff an extension of one week, or until July 17, 2024.  (Doc. #45.)  On July 16, 2024, Plaintiff filed a "Notice" and an "Amended Notice" to inform the court that he planned to file an amended complaint "as a matter of course" based on Defendant Oliver's motion, rather than filing the proposed response for which he requested an extension.  (Docs. #46, #47.)  The court struck those notices and denied the construed request to amend on July 17, 2024.  (Doc. #48.)  In that order, the court reiterated that the response deadline to Defendant Oliver's Motion was July 17, 2024, and that if Plaintiff did not file a response by the end of the day, the court "would proceed without the brief."  (*Id.* At 4.)  On the evening of July 17, 2024, Plaintiff filed an opposed motion for leave to file a second amended complaint.  (Doc. #49.)  Per the prior court order, the undersigned finds it appropriate to proceed with the four referred motions to dismiss.

## II.    Legal Standard

### A.  12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief.  *Ruiz v. Donahue*, 569 F. App'x 207, 210 (5th Cir. 2014) (per curiam) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2002)).  In

---

[7] For a full summary of Plaintiff's numerous requests for extensions, see the court's order at Doc. #48.

considering a motion to dismiss, the court must accept as true the allegations and facts set forth in the complaint and may consider matters of fact which may be in dispute. *Id.* Generally, the burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming*, 281 F.3d at 161 (citations omitted).

If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.), *cert. denied* 536 U.S. 960 (2002) (citations omitted); *see also Goudy-Bachman v. U. S. Dep't of Health and Hum. Servs*., 764 F. Supp. 2d 684, 689 (M.D. Pa. 2011) (citing *Tolan v. United States*, 176 F.R.D. 507, 509 (E.D. Pa. 1998) ("[w]hen a motion is premised on both lack of subject matter jurisdiction and another Rule 12(b) ground, mootness concerns dictate that the court address the issue of jurisdiction first.")); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (citations omitted) ("A [motion to dismiss] for lack of subject matter jurisdiction must be considered . . . before other challenges 'since the court must find jurisdiction before determining the validity of a claim.'")

When considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Bryan v. Stevens*, 169 F. Supp. 2d 676, 681 (S.D. Tex. 2001) (citing *Den Norske Stats Oljeselskap As v. Heeremac Vof*, 241 F.2d 420, 424 (5th Cir. 2001)); *see also Carroll v. Abide*, 788 F.3d 502, 504 (5th Cir. 2015). A motion to dismiss based on the complaint alone presents a "facial attack," and requires the trial court "merely to look to the sufficiency of the allegations in the complaint because they are presumed be true." *Bridges v.*

*Freese*, 122 F. Supp. 3d 538, 542 (S.D. Miss. 2015) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).  In contrast, a "factual" attack challenges the existence of subject matter in fact, irrespective of the pleadings, and matters outside pleadings, such as testimony and affidavits, are considered.  *Id.* (quoting *Menchacha v. Chrysler Credit Corp.*, 613 F.2d 661, 663 (5th Cir. 1980)).

      B.  <u>12(b)(6)</u>

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must contain sufficient facts, which accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To be plausible, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Great Lakes Dredge & Dock Co. LLC v. Louisiana*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly,* 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 12(b)(6) must be read in tandem with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2); *see also Iqbal*, 556 U.S. at 677-78; *Twombly,* 550 U.S. at 555.  To decide whether the complaint states a valid claim for relief, the court accepts all well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *Great Lakes Dredge,* 624 F.3d at 210.  However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)).  "While legal conclusions can provide the complaint's framework, they must be supported by factual

7

allegations." *Iqbal,* 556 U.S. at 679.  The inquiry focuses on the allegations in the pleadings and not on whether the plaintiff has sufficient evidence to succeed on the merits.  *Ackerson v. Bean Dredging*, *LLC*, 589 F.3d 196, 209 (5th Cir. 2009).

### C. Qualified Immunity

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 347 (5th Cir. 2017), *as revised* (July 3, 2017) (*citing Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)).  A "plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).  To establish that qualified immunity does not apply, a plaintiff must prove that the defendants who raised the issue (1) violated a federal statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.  *See Morgan*, 659 F.3d at 371.  "A right is clearly established only if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013) (quoting *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000)). In the school setting, educators are entitled to qualified immunity unless no "reasonable official" would have deemed the disputed conduct constitutional.  *Brinsdon*, 863 F.3d at 347 (citing *Morgan*, 659 F.3d at 371).  The court may analyze either prong of qualified immunity first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### III.  Discussion

According to the amended complaint, the court had federal question jurisdiction under 28 U.S.C. §1331 over the federal claims "which relate to the First and Fourteenth Amendments" and supplemental jurisdiction over Plaintiff's state law claims.  (Doc. #10 at 3.)  The court will

therefore first examine Plaintiff's federal claims before determining supplemental jurisdiction over the pendant state law claims. The federal claim pending before the court is a civil conspiracy claim against Port Arthur ISD, Bienvenue, Oliva, Oliver, and Portiere for the alleged deprivation of Plaintiff's rights under the First and Fourteenth Amendments.[8]

### A. Plaintiff Does Not Overcome the Individual Defendants' Assertions of Qualified Immunity

The Fifth Circuit has been clear that, when qualified immunity is evoked, a court must refrain from focusing on the merits of the underlying claim, and instead focus on whether the person in question is entitled to qualified immunity. *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012) (citing *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir.2009)). Courts have discretion to address either or both prongs of qualified immunity. *Ramirez v. Escajeda*, 44 F.4th 287, 291 (5th Cir. 2022). The undersigned elects to address the second prong of qualified immunity. A plaintiff bears the burden to make the showing that the right alleged to be violated was clearly established by precedent. *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020). A plaintiff meets this burden by showing that "a robust consensus of persuasive authority… defines the contours of the right in question with a high degree of particularity." *Rogers v. Hall*, 46 F.4th 308, 312-13 (5th Cir. 2022).

---

[8] In his response to Defendant Morath's Motion to Dismiss, Plaintiff argues he asserts a claim under *ex parte Young* doctrine for the violation of a constitutional right. (Doc. #19 at 1-2.) This could arguably serve as an anchor claim on which supplemental jurisdiction might attach for state law claims, but there are two issues with that proposition. First, as discussed *infra* note 5, the undersigned will not construe Plaintiff's response to a second series of Motions to Dismiss as an amendment to his complaint. Second, Plaintiff's only reference to Defendant Morath in the amended complaint is that he "acted arbitrarily in the matter of the denial of Plaintiff's appeal from the adverse personal actions against Plaintiff." (Doc. #10 at 17.) This threadbare conclusory statement cannot survive at the 12(b)(6) stage. Furthermore, even assuming Plaintiff pled a proper federal claim through *ex parte Young* doctrine—which he did not—it is an open question whether this claim could serve as the basis for the court's supplemental jurisdiction over the pending state law claims under 28 U.S.C. §1367. There must exist a "common nucleus of operative fact" between the federal question or diversity claim and the claim brought through supplemental jurisdiction. *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 732 (S.D. Tex. 2010). Here, facts about Plaintiff's TWA claim are not operative in determining whether Defendant Morath violated federal law during Plaintiff's state appeal before the Texas Education Commissioner.

Here, Plaintiff does not provide any authority on whether his First and Fourteenth Amendment rights at issue were clearly established in the situation. In his response to Defendants Port Arthur ISD's, Bienvenue's, and Porterie's Motion to Dismiss, Plaintiff argues that he "had a right and obligation to report to Oliva and cooperate with the CPS," but only cites a case where a principal was found to be deliberately indifferent to a *student's* constitutional rights. (Doc. #17 at 12); *see Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, (5th Cir. 1994). Plaintiff does not cite any case involving the constitutional rights of a public employee, nor does he even address whether such rights were clearly established in the situation. Plaintiff's response to Defendant Oliva's motion fails to provide caselaw establishing any of the rights invoked here as clearly established, and he has outright failed to respond to Defendant Oliver's motion. Plaintiff is not *pro se*, but instead represented by able counsel. It is not the job of the court to discern claims or arguments not actually made. *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020); *Hiers v. Bd. of Regents of the Univ. of N. Tex. Sys.*, No. 4:20-CV-321-SDJ, 2022 WL 748502, at *11 (E.D. Tex. Mar. 11, 2022) ("[I]t is not this Court's role to make arguments on behalf of [defendants].").

Plaintiff has not met the demanding clearly established prong to overcome the individual Port Arthur Defendants' claims for qualified immunity. Defendants Bienvenue, Oliva, Oliver, and Porterie are therefore entitled to qualified immunity, and the undersigned will not address the merits of the §1985 conspiracy claims as to those Defendants. *Poole*, 691 F.3d at 630 (citing *Ontiveros*, 564 F.3d at 382). These claims should be dismissed without prejudice.

### B. Plaintiff Fails to State a Claim §1985 Conspiracy Claim Against Defendant Port Arthur ISD

A federal claim for conspiracy to interfere with civil rights must fall under one of the three sections of 42 U.S.C. §1985. First, §1985(1) provides a cause of action against conspiracies that

interfere with "federal officials in the performance of their duties." *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998). This first section "is not applicable to state employees." *Id.*; *see Goins v. City of Sansom Park*, No. 4:14-CV-365-O, 2015 WL 3953795, at *8 n8 (N.D. Tex. May 29, 2015), *R&R adopted*, No. 4:14-CV-365-O, 2015 WL 3960895 (N.D. Tex. June 29, 2015), *aff'd*, 637 F. App'x 838 (5th Cir. 2016). Next, §1985(2) applies only to conspiracies that interfere with party to a legal action, a witness, or a juror. 42 U.S.C. §1985(2). Finally, §1985(3) provides a cause of action against a conspiracy to deprive one of their rights and privileges, but only when the deprivation is caused by racial or class-based animus. *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019); *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001). *But see Cervini v. Cisneros*, 593 F. Supp. 3d 530, 538 (W.D. Tex. 2022) (finding that the racial or class-cased animus requirement does not apply to "the election advocacy portion of §1985(3)").

Here, Plaintiff's claims do not fall under any of the sections of §1985. Plaintiff's claims are against a local school district, school district employees, and a Texas state official, rendering §1985(1) inapplicable. Likewise, §1985(2) does not apply as Plaintiff does not allege that Defendants attempted to interfere with Plaintiff as a party, witness, or juror to a legal proceeding. Finally, Plaintiff cannot bring a claim under §1985(3) because he has not pled racial or class-based animus played any role in the alleged constitutional violations.[9] Plaintiff has not sufficiently pled a federal conspiracy claim. This claim should therefore be dismissed with prejudice for failure to state a claim under Rule 12(b)(6).

---

[9] Plaintiff's amended complaint is silent on the issue of race. Even if Plaintiff had invoked race in his amended complaint, the heart of Plaintiff's claim is that he reported student abuse and was retaliated against. A plaintiff fails to state a claim under §1985(3) when he fails to "link his conspiracy allegations to his status." *Cantu*, 933 F.3d at 420.

C.  <u>Supplemental Jurisdiction Over State Law Claims</u>

As the undersigned recommends dismissing Plaintiff's federal claims, the court has discretion to dismiss Plaintiff's state law claims.  After the anchor claims are dismissed, the general rule in the Fifth Circuit is for the court to dismiss claims based on supplemental jurisdiction.  *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011); *Carney v. New Orleans City*, 468 F. Supp. 3d 751, 768 (E.D. La. 2020).  The undersigned finds no reason to depart from this general rule.

D.  <u>Leave to Amend Should Not be Granted</u>

As noted above, Plaintiff amended his complaint once before in response to two Motions to Dismiss that raise largely the same arguments as the motions pending before the court.  In his reply to Defendants Port Arthur ISD's, Bienvenue, and Porterie's current Motion to Dismiss, Plaintiff informed the court he was going to file a motion for leave to file a Second Amended Complaint on or before December 21, 2023.  (Doc. #18 at 5.)  He never did so.  To the extent Plaintiff still requests leave to amend, the court should deny such relief as futile.

Here, the Port Arthur Defendants are all part of the same organization and thus cannot enter into a conspiracy under §1985 under the intracorporate exception.  *See Konan v. United States Postal Serv.*, 96 F.4th 799, 805 (5th Cir. 2024); *see, e.g.*, *Trice v. Pearland Indep. Sch. Dist.*, No. 3:19-CV-00286, 2020 WL 1557750, at *11 (S.D. Tex. Mar. 16, 2020), *R&R adopted*, No. 3:19-CV-00286, 2020 WL 1667748 (S.D. Tex. Apr. 1, 2020); *Cuadra v. Houston Indep. Sch. Dist.*, No. CV H-07-3300, 2009 WL 10703694, at *13 (S.D. Tex. Aug. 17, 2009), *aff'd*, 626 F.3d 808 (5th Cir. 2010).  In rare circumstances, individuals within one corporation or governmental entity can conspire for §1985 purposes where they "act for their own personal purposes." *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998).  Plaintiff's factual allegations

state that the purpose of the conspiracy is to protect a Port Arthur ISD policy of covering up student abuse. Plaintiff confirms in his response to Defendant Oliva's Motion to Dismiss that he is challenging an "unwritten policy." (Doc. #31 at 2.) For that reason, any conspiracy claim is barred under the intracorporate exception and leave to amend would be futile. Moreover, as Plaintiff had already amended his claims once in the face of nearly identical motions to dismiss, and asserted he intended to amend again over seven months ago but did not, the undersigned concludes Plaintiff has had a fair opportunity to make his case but chose to stand by this complaint. Further amendment is a waste of judicial resources and is prejudicial to Defendants.

## IV.    Conclusion

Plaintiff fails to overcome Defendants Bienvenue's, Oliva's, Oliver's, and Porterie's assertions of qualified immunity. All claims against those defendants should be **DISMISSED without prejudice**. Additionally, Plaintiff fails to state a claim under 42 U.S.C. §1985 against Defendant Port Arthur ISD and this claim should be **DISMISSED with prejudice**. As no other federal or diversity claims are pending, the court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims which should be **DISMISSED without prejudice** for want of jurisdiction.

## V.    Recommendation

For the foregoing reasons, the undersigned recommends that all four pending Motions to Dismiss (docs. #12, #13, #21, #42) be **GRANTED** as is consistent with this Report and Recommendation.

## VI.    Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate

judge.  28 U.S.C. § 636(b)(1)(C).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Without leave of court, **objections are limited to eight (8) pages**.  E.D. TEX. LOC. R. CV-72(c).

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 18th day of July, 2024.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE